IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| A&B ASPHALT, INC., a Washington corporation, | Case No. 2:13-CV-00104-SU |
| Plaintiff, | FINDINGS AND RECOMMENDATION |
| v. | |
| HUMBERT ASPHALT, INC., an Oregon corporation; DAN HUMBERT, an Oregon citizen; and BRAD HUMBERT, an Oregon citizen, | |
| Defendants, | |
| v. | |
| ADAM SCHATZ, a Washington citizen; DARREN BENDER, a Washington citizen; and MIKE STADLER, a Washington citizen, | |
| Counterclaim Defendants. | |

Page 1 - FINDINGS AND RECOMMENDATION

SULLIVAN, Magistrate Judge:

A&B Asphalt, Inc. ("A&B"), a Washington corporation, filed a complaint based on diversity jurisdiction against Humbert Asphalt, Inc., an Oregon corporation, Dan Humbert, an Oregon citizen, and Brad Humbert, an Oregon citizen (collectively "Humbert"), alleging claims for defamation and intentional interference with economic relations ("IIER").[1]  Humbert answered A&B's complaint with two counterclaims and eight affirmative defenses, and added Adam Schatz, Darren Bender, and Mike Stadler, all Washington citizens, as counterclaim defendants.[2]  A&B moves to dismiss Humbert's counterclaims pursuant to Fed. R. Civ. P. 12(b)(6) and to strike five of its affirmative defenses pursuant to Fed. R. Civ. P. 12 (f).  For the reasons set forth below, A&B's motions should be granted, in part, and denied, in part.

## BACKGROUND

A&B and Humbert are asphalt companies, both with offices located in Milton-Freewater, Oregon, who compete for public contracts to build or surface roads, drives, and parking lots.  *See* Compl. ¶¶ 1-2, 14; Pl.'s Mem. in Supp. of Mot. Dismiss 1; Defs.' Resp. to Mot. Dismiss 1.  On January 18, 2013, A&B filed a complaint in this Court for defamation and IIER, arising out of Humbert's allegedly false statements concerning A&B's asphalt business practices.  Compl. ¶¶ 8-13. On March 13, 2013, Humbert filed a special motion to strike A&B's complaint pursuant to Oregon's Anti-SLAPP statute, Or. Rev. Stat. § 31.150 *et seq*.  On August 28, 2013, after limited discovery,

---

[1] Defendant Dan Humbert "is an officer of Humbert Asphalt and is related to defendant Brad Humbert," who "was formerly employed by [A&B]."  Compl. ¶¶ 3-4.

[2] Counterclaim defendants Schatz, Bender, and Stadler "were authorized agents of [A&B] in all aspects of running [A&B's] asphalt supply and paving business."  Am. Answer ¶ 32.

Page 2 - FINDINGS AND RECOMMENDATION

the parties filed a stipulated motion to withdraw Humbert's Anti-SLAPP motion with prejudice and without costs or attorney fees. On August 29, 2013, the Court granted the parties' stipulated motion.

On October 24, 2013, Humbert filed an answer to A&B's complaint, adding the counterclaim defendants and asserting claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), Washington's Consumer Protection Act ("WCPA"), and state common law. Humbert also raised several affirmative defenses. On December 23, 2013, A&B moved to dismiss Humbert's counterclaims and affirmative defenses. On January 16, 2014, before the Court ruled on A&B's motion, Humbert filed an amended answer, realleging only its WCPA and IIER counterclaims, and raising the following affirmative defenses: (1) failure to state a defamation claim; (2) truth; (3) privilege; (4) good motive - fair comment; (5) fair competition; (6) lack of causally related damages; (7) failure to mitigate; and (8) failure to state an IIER claim.

Humbert's counterclaims are based on "improperly low bids" submitted by A&B on public works contracts with Walla Walla County ("County"). Am. Answer. ¶ 35. According to Humbert, A&B's bids were predicted on "the use of recycled asphalt and other inferior cost-saving measures that [it] knew would be prohibited," and if not for which "Humbert would have been awarded several contracts and received benefits flowing therefrom." *Id.* at ¶¶ 35-36. On February 3, 2014, A&B filed the present motion. Oral argument was held on March 10, 2014.

## STANDARDS

"Where a counterclaim 'fail[s] to state a claim upon which relief can be granted,' it must be dismissed." *Unum Life Ins. Co. of Am. v. Martin*, 2013 WL 3995005, *2 (D.Or. Aug. 1, 2013) (quoting Fed. R. Civ. P. 12(b)(6)). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 570 (2007). For purposes of a motion to dismiss, the complaint is liberally construed in favor of the counterclaimant and its allegations are taken as true. *Rosen v. Walters*, 719 F.2d 1422, 1424 (9th Cir. 1983). Bare assertions, however, that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Rather, to state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 2101 (2012).

Where fraud is alleged, heightened pleading standards apply. *See* Fed. R. Civ. P. 9(b). The counterclaimant "must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Schreiber Distrib. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (citation and internal quotations omitted). Likewise, the counterclaimant is required to "set forth what is false or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation and internal quotations omitted). Fed. R. Civ. P 9(b) "does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations . . . and inform each defendant separately of the allegations surrounding his alleged participation in fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-5 (9th Cir. 2007) (citation and internal quotations omitted).

Under Fed. R. Civ. P. 12(f), "a court may strike affirmative defenses . . . if they present an insufficient defense, or any redundant, immaterial, impertinent, or scandalous matter." *Gessele v. Jack in the Box, Inc.*, 2011 WL 3881039, *1 (D.Or. Sept. 2, 2011) (citation and internal quotations omitted). As with counterclaims, the pleading requirements articulated in "*Twombly* and *Iqbal* apply to affirmative defenses." *Id.* at *2. Nonetheless, because "striking a defense is a drastic remedy,"

Fed .R. Civ. P. 12(f) motions are "disfavored and seldom granted." *Id.* at *1 (citations and internal quotations omitted).

## DISCUSSION

A&B asserts that Humbert's WCPA counterclaim fails as a matter of law because there is no impact on the public interest, causation is too remote, and the statute does not apply to private disputes between business competitors, especially where an Oregon company is involved.[3]  Pl.'s Mem. in Supp. of Mot. Dismiss 4-14.  A&B also contends that both of Humbert's counterclaims fail at the pleading level as they lack plausibility and are conclusory.  *Id.* at 14-26.  Further, A&B argues that Humbert's first, second, sixth, seventh, and eighth affirmative defenses should be stricken as "inappropriate" and vague.  *Id.* at 26-29.

I.    Washington Consumer Protection Act Counterclaim

To state a WCPA claim, "a plaintiff must establish five distinct elements: (1) unfair or

---

[3] To the extent A&B asserts that Humbert lacks standing to bring a WCPA claim because "[i]t is not a Washington resident [or] citizen," A&B's argument is without merit. Pl.'s Mem. in Supp. of Mot. Dismiss 13.  "[T]he critical inquiry in addressing standing is the connection between plaintiffs' CPA claim and the interests of Washington citizens and residents, not whether a defendant's business is located in Washington or whether a significant portion of the disputed transaction occurred within Washington."  *Malmquist v. OMS Nat'l Ins. Co.*, 2010 WL 5621358, *12 (D.Or. Dec. 28, 2010), *adopted*, 2011 WL 202292 (D.Or. Jan. 18, 2011).  Humbert alleges here that A&B, a Washington corporation, laid inferior asphalt in Washington pursuant to public works contracts it executed with a Washington County.  Am Answer ¶¶ 32, 34-36, 42-45.  Humbert also specifically asserts that Washington's citizens and residents have been injured by A&B's allegedly wrongful conduct: "[A&B's actions] deceive[d] a substantial portion of the public, including public owners and officials involved in the award of [the Washington] public works paving projects . . . and the [Washington] taxpayers who fund such projects."  *Id.* at ¶ 44; *see also* Defs.' Resp. to Mot. Dismiss 13 ("Washington residents have an interest in public bidding and in public works improvement projects in Washington[,] [and they also] drive on the roads and highways that were the subject of the public works improvements contract").  These allegations outline a  sufficient connection between Humbert's WCPA counterclaim and the people of Washington to confer standing.

deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 780, 719 P.2d 531 (1986). All five elements must be satisfied in order for a plaintiff to prevail under the WCPA. *Id.* at 793. A WCPA claim based on deception must also satisfy Fed. R. Civ. P. 9(b)'s heightened pleading standards. *See, e.g.*, *Brodie v. N.W. Trustee Servs., Inc.*, 2012 WL 4468491, *5 (E.D.Wash. Sept. 27, 2012); *see also Vess*, 317 F.3d at 1103–04 (allegations "grounded in fraud" or that "sound in fraud" must fulfill the particularity requirement of Fed. R. Civ. P. 9(b), even where no formal fraud claim is plead). A&B is silent as to the first, second, and fourth elements, and instead contends that dismissal is warranted because Humbert cannot demonstrate an impact on the public interest or legal causation. Pl.'s Mem. in Supp. of Mot. Dismiss 4-13.

    A.    <u>Public Interest</u>

       Where, as here, "the transaction was essentially a private dispute . . . it may be more difficult to show that the public has an interest in the subject matter." *Hangman*, 105 Wash.2d at 790-91; *see also Broten v. May*, 49 Wash.App. 564, 570, 744 P.2d 1085 (1987), *rev. denied*, 110 Wash.2d 1003 (1988) (defining a private dispute as one "between competitors, not between a business and a consumer"). Nevertheless, "it is the likelihood that additional plaintiffs have been or will be injured in exactly the same fashion that changes a factual pattern from a private dispute to one that affects the public interest." *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 162 Wash.2d 59, 80, 170 P.3d 10 (2007) (citation and internal quotations omitted). "The following four factors, although not dispositive in themselves, are indicia of an effect on public interest by private disputes: (1) Were the alleged acts committed in the course of defendant's business? (2) Did defendant

advertise to the public in general? (3) Did defendant actively solicit this particular plaintiff, indicating potential solicitation of others? (4) Did plaintiff and defendant occupy unequal bargaining positions?" *Broten*, 49 Wash.App. at 570 (citing *Hangman*, 105 Wash.2d at 790–91); *see also N.W. Prod. Design Grp., LLC v. Homax Prods., Inc.*, 2013 WL 992666, *5-6 (Wash.App. Mar. 11, 2013) (discussing the *Hangman* factors and citing Wash. Rev. Code § 19.86.093, which codifies the public impact requirement). While there is no bright-line rule regarding how many of these elements must be present to implicate the public interest, courts generally decline to find such an interest where two or more are unmet. *See, e.g.*, *Broten*, 49 Wash.App. at 571; *Michael v. Mosquera-Lacy*, 165 Wash.2d 595, 605, 200 P.3d 695 (2009).

In this case, it is undisputed that the allegedly wrongful acts were committed in the course of A&B's business. Pl.'s Mem. in Supp. of Mot. Dismiss 12; Defs.' Resp. to Mot. Dismiss 9. Humbert contends the second public interest factor is satisfied because A&B advertised to the public by "submitting a public bid on a public works project" to the County. Defs.' Resp. to Mot. Dismiss 9. Bidding on a public works project, however, is not synonymous with advertising to the general public. *See Evergreen Moneysource Mortg. Co. v. Shannon*, 167 Wash.App. 242, 261, 274 P.3d 375 (2012) ("conduct that is not directed at the public, but, rather, at a competitor, lacks the capacity to impact the public in general") (citation omitted). Even if it were, "widespread advertising" is nonetheless required to meet this element. *Hangman*, 105 Wash.2d at 794. Submitting two bids[4] to a single public entity neither amounts to widespread advertising nor does it have the capacity to

---

[4] Humbert alleges broadly that A&B furnished "improperly low bids" on "multiple public works contracts," but only identifies two specific instances, one in February 2011 and the other in February 2012, wherein A&B allegedly misrepresented the quality of its asphalt. Am. Answer ¶ 35. The Court therefore disregards Humbert's conclusory allegations regarding any other public works contracts. *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969-70 (9th Cir. 2009).

deceive a substantial portion of the public.

Concerning the third factor, it is undisputed that A&B did not, actively or otherwise, solicit Humbert.  Pl.'s Mem. in Supp. of Mot. Dismiss 12; Defs.' Resp. to Mot. Dismiss 9.  Regardless, Humbert argues that "the spirit of the factor is squarely present" because "A&B's conduct was clearly repeated."  Defs.' Resp. to Mot. Dismiss 9.  The Court disagrees.  Washington law provides that the third factor is satisfied only where "the defendant actively solicited this particular plaintiff, indicating potential solicitation of others."  *Broten*, 49 Wash.App. at 571.  As A&B notes, it neither petitioned "Humbert, who is a competitor and not a customer" nor "the County; the County solicited A&B."  Pl.'s Reply to Mot. Dismiss 14.  In other words, there is no indication that A&B sought business from this particular counterclaimant or from the public generally.

Finally, the parties did not have unequal bargaining power.  As sophisticated individuals that are capable of negotiating on their own behalf, "experienced businessmen [are] not representative of bargainers vulnerable to exploitation."  *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 86 Wash.App. 732, 745, 935 P.2d 628 (1997), *rev. denied*, 133 Wash.2d 1033, 950 P.2d 477 (1998); *see also Fleetwood v. Stanley Steemer Int'l*, 446 Fed.Appx. 868, 869 (9th Cir. 2011) ("there is no violation of the CPA, because, as experienced businessmen, Appellants cannot demonstrate the required public interest").  While Humbert argues that "[t]he present case can be distinguished . . . because the relative sophistication of Humbert was irrelevant to the dispute," the fact remains that the parties participated as coequals in the same bidding process arranged by the County.

In sum, it is unlikely that additional plaintiffs have been or will be injured in exactly the same fashion as Humbert.  *See Exxon Mobil Corp. v. Freeman Holdings of Wash., LLC*, 2010 WL 4918723, *2 (E.D.Wash. Nov. 24, 2010) (dismissing the plaintiff's WCPA claim where "[t]he

Page 8 - FINDINGS AND RECOMMENDATION

factual allegations relate to Exxon and Defendants' interaction relating to the fuel at the Moses Lake airport . . . [although] airport customers may have been impacted by Exxon's alleged conduct, they were not injured in the same fashion as Defendants"). The parties to this dispute were the only bidders on the two public contracts Humbert lost due to A&B's allegedly wrongful conduct. Am. Answer ¶ 34, 35; Defs.' Resp. to Mot. Dismiss 10. Humbert asserts general harm to taxpayers and the public, however, there is no allegation that any other individual or entity was injured in a like manner, as required under the statute. Am. Answer ¶¶ 42-45; *Karuza v. Thorpe*, 1997 WL 11839, *4 (Wash.App. Jan. 10, 1997), *rev. denied*, 132 Wash.2d 1013, 940 P.2d 654 (1997) (generalized harm is insufficient to state a claim under the WCPA).[5] Therefore, because Humbert fails to allege an impact to the public interest, A&B's motion should be granted and Humbert's WCPA counterclaim should be dismissed.

    B.    <u>Causation</u>

A preliminary issue must be resolved before reaching the substantive merits of A&B's motion as it relates to causation. Humbert contends legal causation is not required to state a claim under the WCPA. Specifically, Humbert argues that *Browne v. Avvo Inc.*, 525 F.Supp.2d 1249 (W.D.Wash. Dec. 18, 2007), and *Fidelity Mortg. Corp. v. Seattle Times Co.*, 131 Wash.App. 462,

---

[5] According to Humbert, this Court is not bound by the cases cited above because "none involved competitive bidding on public works contract[s,]" which "necessarily affect the public interest." Defs.' Resp. to Mot. Dismiss 11-13. This assertion is somewhat dubious, given that Humbert disavows the existence of a per se public interest. *Id.* at 9 n.1; *see also Hangman*, 105 Wash.2d at 790-92 ("when a statute containing a legislative public interest pronouncement can be shown to have been violated, . . . the public interest requirement is satisfied per se"). Put another way, without a per se public interest showing, Humbert's assertion relating to how A&B's actions "necessarily" effect the public are unpersuasive. Further, Humbert has not cited to, and the Court is not aware of, any authority mandating the application of a different standard in the context of a public work.

128 P.3d 621 (2005) (as amended), on which A&B relies, "have not been approved by the Washington Supreme Court, which subsequently adopted a different proximate cause standard." Defs.' Resp. to Mot. Dismiss 4-6 (citing *Indoor Billboard*, 162 Wash.2d 59; *Schnall v. AT&T Wireless Servs., Inc.*, 171 Wash.2d 260, 259 P.3d 129 (2011)). Pursuant to this "different proximate cause standard," Humbert contends that it only need establish an immediate "but for" causal link between the alleged unfair or deceptive business practice and its injury in order to survive dismissal.

The problem with Humbert's argument is that neither *Indoor Billboard* nor *Schnall* address or discuss legal causation. Rather, in both cases, the plaintiff was the direct victim of the defendant's allegedly unfair or deceptive business practice, such that the sole issue was cause in fact. *See Indoor Billboard*, 162 Wash.2d at 78-83 (in evaluating a customer's allegation that the telephone company illegally disguised an extra charge as a tax, the court "h[e]ld that the proximate cause standard [requires a] plaintiff [to] establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury"); *Schnall*, 171 Wash.2d at 277-79 (relying on *Indoor Billboard* and acknowledging that, in addressing a claim involving an affirmative representation made to customers, "CPA claims [are analyzed] under the 'but for' standard of proximate causation").

Moreover, in accordance with *Browne*, cases subsequent to *Indoor Billboard* or *Schnall* have dismissed WCPA claims where there was no legal causation. *Blaylock v. First Am. Title Ins. Co.*, 2008 WL 8741396, *6-9 (W.D.Wash. Nov. 7, 2008); *Babrauskas v. Paramount Equity Mortg.*, 2013 WL 5743903, *3 (W.D.Wash. Oct. 23, 2013); *Dunton v. Droker*, 2009 WL 3338110, *6 (Wash.App. Oct. 19, 2009); *see also Echlin v. Asset Sys., Inc.*, 2013 WL 308984, *6-7 (W.D.Wash. Jan. 25, 2013) (distinguishing *Browne* and finding legal causation because the plaintiff alleged he was the

direct victim).  Therefore, contrary to Humbert's contention, both legal and factual causation must be present to establish the fifth element of a WCPA claim.[6]  *Dunton*, 2009 WL 3338110 at *6; *see also Hartley v. State*, 103 Wash.2d 768, 777, 698 P.2d 77 (1985) (en banc) ("Washington law recognizes two elements to proximate cause: Cause in fact and legal causation"); *Blaylock*, 2008 WL 8741396 at *8 ("Washington courts have consistently closed their doors to persons not directly harmed by CPA violations").

"Cause in fact refers to the 'but for' consequences of an act," whereas "[l]egal causation refers to the determination of how far the consequences of a defendant's acts should extend." *Dunton*, 2009 WL 3338110 at *6 (citing *VersusLaw, Inc. v. Stoel Rives, LLP*, 127 Wash.App. 309, 328, 111 P.3d 866 (2005); *City of Seattle v. Blume*, 134 Wash.2d 243, 252, 947 P.2d 223 (1997)). "Legal causation is a much more fluid concept than cause in fact"; it is a question of law, to be determined by the court, and depends on "mixed considerations of logic, common sense, justice, policy, and precedent."  *Kim v. Budget Rent A Car Sys., Inc.*, 143 Wash.2d 190, 204, 15 P.3d 1283 (2001) (citations and internal quotations omitted).  Thus, even where "a causal link can be alleged, a claim . . . will fail if the damages [or the injury] are too remote from the asserted cause." *Browne*,

---

[6] Humbert's additional argument that "[t]he federal standard for proximate causation is improper because federal courts are bound to follow state Supreme Courts" is without merit. Defs.' Resp. to Mot. Dismiss 4.  Humbert is correct that this Court must, "[w]henever possible[,] follo[w] applicable decisions of state courts."  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 85 (1938).  As denoted above, the Washington Supreme Court has not addressed the precise factual or legal circumstances presented here.  Nevertheless, both the Ninth Circuit and the Washington Supreme Court instruct "Washington courts [to follow] federal law when interpreting the CPA" because the "CPA is modeled after federal antitrust statutes," which require a showing of legal causation.  *Ameriquest Mortg. Co. v. Office of Att'y Gen. of Wash.*, 177 Wash.2d 467, 497 n.20, 300 P.3d 799 (2013) (citing Wash. Rev. Code § 19.86.920); *Ass'n of Wash. Public Hosp. Dists. v. Philip Morris Inc.*, 241 F.3d 696, 705-06 (9th Cir.), *cert. denied*, 534 U.S. 891 (2001); *Fidelity*, 131 Wash.App. at 470-71.

525 F.Supp.2d at 1254-55 (citing *Fidelity*, 131 Wash.App. at 470-71).

Here, legal causation is lacking. Unlike *Indoor Billboard* and *Schnall*, this case does not involve a direct unfair or deceptive business practice. Critically, there is no contention that A&B made a false statement concerning the quality of its asphalt to Humbert. The direct victim of A&B's allegedly harmful misrepresentation, if there is one, would be the County. Am. Answer ¶ 35. It is undisputed that the County is capable of vindicating its own rights and has been apprised of A&B's conduct, "but to date . . . has taken no action." *Id.* at ¶ 37. Under these circumstances, the link between Humbert's injury and A&B's alleged wrongdoing is too attenuated to impose liability under the WCPA. Further, ascertaining damages would require the Court to adopt complicated rules. In addition to alleging its own lost profits, Humbert seeks damages for the "[t]he Washington public" and the "[t]axpayers in Washington." Defs.' Resp. to Mot. Dismiss 2; Am. Answer ¶¶ 42-45. While it concludes that apportionment would be straightforward, Humbert neither outlines how it would allocate the public's alleged losses nor the damages the County sustained. *See generally* Defs.' Resp. to Mot. Dismiss. Because Humbert's allegations are insufficient to establish legal causation, A&B's motion should be granted as to Humbert's WCPA claim.

II.    Intentional Interference With Economic Relations Counterclaim

To demonstrate an IIER claim, the plaintiff "must allege '(1) the existence of a professional or business relationship (which could include, e.g., a contract or a prospective economic advantage); (2) intentional interference with that relationship or advantage; (3) by a third party; (4) accomplished through improper means or for an improper purpose; (5) a causal effect between the interference and the harm to the relationship or prospective advantage; and (6) damages.'" *Lyden v. Nike Inc.*, 2013 WL 5729727, *3 (D.Or. Oct. 22, 2013) (quoting *Allen v. Hall*, 328 Or. 276, 281, 974 P.2d 199

(1999)); *see also Pleas v. City of Seattle*, 112 Wash.2d 794, 804, 774 P.2d 1158 (1989) (IIER claims are identical under Washington and Oregon law).  A&B asserts that Humbert neglected to plead an improper purpose or means and that dismissal is required.  Pl.'s Mem. in Supp. of Mot. Dismiss 21-25.

      A.    <u>Improper Purpose</u>

"If liability in tort is to be based on an actor's purpose, then the purpose must be to inflict injury on the plaintiff as such."  *N.W. Natural Gas Co. v. Chare Gardens, Inc.*, 328 Or. 487, 498, 982 P.2d 1117 (1999) (citation and internal quotations omitted).  It is therefore "not improper for a defendant to interfere in a manner wholly consistent with its pursuit of its own business purposes," including the "maximiz[ation] of profits."  *Eusterman v. N.W. Permanente*, P.C., 204 Or.App. 224, 238, 129 P.3d 213, *rev. denied*, 341 Or. 579, 146 P.3d 884 (2006) (citation and internal quotations and brackets omitted).  Instead, where business competitors are involved, the defendant must have acted "solely from such an improper noncompetitive purpose, e.g., the satisfaction of [the defendant's] spite or ill will."  *Douglas Med. Ctr., LLC v. Mercy Med. Ctr.*, 203 Or.App. 619, 632, 125 P.3d 1281 (2006).

Humbert identifies three allegations, each of which "alone is sufficient" to establish an improper purpose: (1) "A&B prepared bids 'with the intended result of undercutting Humbert's bids'"; (2) "A&B targeted Humbert because A&B 'knew that Humbert did not have the facilities necessary for the production of recycled asphalt products'"; and (3) "A&B 'intentionally interfered with Humbert's business expectancy.'"  Defs.' Resp. to Mot. Dismiss 19 (quoting Am. Answer ¶¶ 39-40).  Initially, the latter allegation is conclusory, devoid of factual support, and not entitled to the presumption of truth.  *Iqbal*, 556 U.S. at 680-82.  Concerning the remaining two allegations, it is

undisputed that Humbert and A&B were competitors bidding for asphalt business.  Accordingly, the fact that A&B prepared bids with the intent to win public contracts, or treated  Humbert as a business competitor, does not support the existence of an improper purpose or noncompetitive business motive.

        B.     <u>Improper Means</u>

For means to be improper, they "must violate some objective, identifiable standard, such as a statute or other regulation, or a recognized rule of common law, or perhaps an established standard of a trade of profession." *N.W. Natural*, 328 Or. at 498 (citation omitted).  "That is, the means must be wrongful in some manner other than simply causing the damages claimed as a result of the conduct," such as the use of "violence, threats, intimidation, deceit, misrepresentations, bribery, unfounded litigation, defamation and disparaging falsehood." *Douglas Med.*, 203 Or.App. at 634 (citations and internal quotations omitted).

Humbert's IIER claim results from the loss of two County contracts.  A&B submitted lower bids and Humbert claims these bids were fraudulent.  Specifically, Humbert first alleges that A&B employed improper means by proffering these fraudulent bids.  Am. Answer ¶ 40; *see also* Defs.' Resp. to Mot. Dismiss 20 ("the mere fact . . . A&B submitted a fraudulent bid is enough to allege the use of improper means").  Second, A&B asserts that "A&B used improper means . . . by relying on pricing for recycled asphalt when the governing contract documents specifically prohibited such recycled products."  Defs.' Resp. to Mot. Dismiss 20; *see also* Am. Answer ¶ 35 ("[A&B] intentionally based its bid on the use of recycled asphalt and other inferior cost-saving measures that [A&B] knew to be prohibited in the applicable project specifications," which were "incorporated" into the "contract documents").

Page 14 - FINDINGS AND RECOMMENDATION

Regarding Humbert's first allegation, A&B's submission of fraudulent bids is inadequate to establish improper means, as these bids are not linked to any objective, identifiable standard, let alone the violation of one. Essentially, Humbert concludes that A&B acted improperly by making its bids contingent upon the use of recycled asphalt, however, Humbert does not allege any facts or provide any argument regarding the terms of the County's bid requests or their independent enforceability. *See generally* Am. Answer; Def.'s Resp. to Mot. Dismiss. Without well-plead allegations evincing that A&B violated the County's bid request or another professional standard inherent to bidding on public works projects, Humbert cannot state an IIER claim.

Regarding Humbert's second assertion, although Humbert explicitly denies that its IIER claim arises from a breach of A&B's contract with the County, the only objective standard Humbert identifies originated with that contract. Defs.' Resp. to Mot. Dismiss 20-21. In other words, Humbert asserts no facts, beyond A&B's alleged nonperformance of the contract's project specifications, evincing that A&B engaged in improper means. However, Humbert "is neither a party to, nor a third party beneficiary of" the contract between the County and A&B, such that it "lacks standing to enforce the terms of [that agreement]." *Oliver v. Delta Fin. Liquidating Trust*, 2012 WL 3704954, *4 (D.Or. Aug. 27, 2012) (citations omitted). As discussed above in section I(B), Humbert was not the direct victim of A&B's alleged deceit and misrepresentations; rather, the direct victim, if any, was the County, but "the County has taken no action" regarding any alleged contract violations by A&B. *See* Am. Answer ¶¶ 37, 42-45. Humbert fails to plausibly allege the existence of an improper purpose or means and A&B's motion should be granted as to Humbert's IIER claim.

III.    Counterclaim Defendants

The only specific allegation relating to counterclaim defendants Adam Schatz, Darren Bender, or Mike Stadler appears in the introductory portion of Humbert's complaint, wherein Humbert identifies these parties as "authorized agents of [A&B]." Am. Answer ¶ 32. The remainder of Humbert's assertions relating to these counterclaim defendants are vague and do not distinguish between their conduct and that of the business. *See, e.g.*, *id.* at ¶ 39 ("[A&B] and Additional Counterclaim Defendants also knew that Humbert did not have the facilities necessary for the production of recycled asphalt products, so that Humbert was in no position to submit the non-compliant and artificially low bids submitted by [A&B] (through the efforts of Additional Counterclaim Defendants)"). The Court acknowledges Humbert's argument that allegations regarding A&B should be construed to encompass the individually named counterclaim defendants because "A&B is a corporation . . . which does not exist in the physical world," such that it must act through its agents "to physically prepare and submit fraudulent bids or to physically oversee and manage the actual paving work that happened." Defs.' Resp. to Mot. Dismiss 21-22. Despite Humbert argument, the fact remains that it is unclear what role, if any, counterclaim defendants Adam Schatz, Darren Bender, or Mike Stadler each played in A&B's allegedly deceptive business practices. *Swartz*, 476 F.3d at 764-65; *see also White v. McKee*, 2013 WL 6158684, *4 (W.D.Mich. Nov. 25, 2013) ("[i]t is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants") (citing *Twombly*, 550 U.S. at 544). In other words, Humbert impermissibly neglected to tie any individual counterclaim defendant to any specific statement or action. A&B's motion should be granted, in its entirety, as to Humbert's counterclaims.

## IV.    Failure to State a Claim Affirmative Defenses

A failure to state a claim affirmative defense "can simply be treated as a specific denial,"

which "may be alleged in a conclusory fashion" when asserted "[i]n response to an initial complaint." *Gessele*, 2011 WL 3881039 at \*2. A&B asserts that Humbert's first and eighth affirmative defenses, for failure to state a defamation and IIER claim, respectively, should be stricken because "the Humberts have already tried to dismiss A&B's claims, and lost." Pl.'s Mem. in Supp. of Mot. Dismiss 27. A&B incorrectly states the procedural history of this case. The Court did not rule on the substance of Humbert's Anti-SLAPP motion. Instead, the parties mutually agreed "to withdraw Defendants' Special Motion to Strike (Anti-SLAPP Motion under ORS 31.150) . . . with prejudice and without costs or attorney fees to any party." Stipulated Mot. to Withdraw 2 (Aug. 28, 2013). Because Humbert's failure to state claim defenses are asserted in regard to an initial complaint, A&B's motion should be denied as to Humbert's first and eighth affirmative defenses.

V.    Truth Affirmative Defense

Truth is a recognized defense to a defamation suit. *Adcock v. City of Canby*, 2011 WL 609799, \*4-5 (D.Or. Feb. 15, 2011) (citation omitted). Here, A&B alleges that Humbert made or published a number of false and defamatory statements concerning its asphalt business. Compl. ¶¶ 8-22. Pursuant to its second affirmative defense, Humbert contends "that all statements and comments by [Humbert] about [A&B] were true, or substantially true, and therefore cannot be the basis for a defamation claim." Am. Answer ¶ 23. As the basis of its counterclaims, Humbert also includes allegations detailing A&B's deceptive business practices, including misrepresentations A&B made about the quality of its asphalt. *Id.* at ¶¶ 35-37.

Humbert's second affirmative defense is sufficiently plead to survive A&B's motion. While A&B describes Humbert's truth defense as "threadbare," both parties agree that Humbert made statements attacking A&B's business practices. Pl.'s Mem. in Supp. of Mot. Dismiss 28; Am.

Answer ¶¶ 23, 34-37.  The Court concurs with Humbert that "[w]hether the alleged statements and whether the statements actually made by Humbert about A&B are true is the meat of the defamation claim and should not be decided at the pleading stage."  Pl.'s Mem. in Supp. of Mot. Dismiss 24.  A&B's motion should therefore be denied as to Humbert's second affirmative defense.

VI.    <u>Mitigation and Causation Affirmative Defenses</u>

Ordinarily, a plaintiff cannot recover damages that were not caused by the defendant or could have been mitigated.  *Greenbrier Leasing Corp. v. Intermountain Commodities Co., LLC*, 2005 WL 1334360, *6 (D.Or. June 3, 2005) (citing *Enco, Inc. v. F.C. Russell Co.*, 210 Or. 324, 339-40, 311 P.2d 737 (1957)).  Humbert's sixth and seventh affirmative defenses are both plead in response to A&B's IIER claim.  *See* Am. Answer ¶¶ 26-27.  Specifically, Humbert's sixth affirmative defense states: "[n]o act or omission of the part of [Humbert] either caused or contributed to whatever injury (if any) [A&B] may have sustained."  *Id.* at ¶ 26.  Similarly, Humbert's seventh affirmative defense specifies: "[A&B] failed to properly mitigate its damages, if any."  *Id.* at ¶ 27.

Whether these allegations are adequate to survive a Fed. R. Civ. P. 12(f) motion is a close question.  On the one hand, as A&B observes, "[t]hese conclusory assertions provide no clue why A&B failed to mitigate or why causation is lacking."  Pl.'s Mem. in Supp. of Mot. Dismiss 29.  On the other hand, Humbert's sixth and seventh affirmative defenses, when read in conjunction with its counterclaims, provide fair notice of Humbert's underlying position - i.e. that Humbert's statements concerning A&B's corrupt asphalt practices were true, so that any loss of A&B's community goodwill or business prospects was not caused by Humbert.  *See generally* Am. Answer.  The Court also notes that ambiguities regarding these affirmative defenses could be resolved through the discovery process, which thus far has been limited to Humbert's Anti-SLAPP motion.  *Gessele*, 2011

WL 3881039 at *3-4, 6.  Additionally,  Humbert has indicated an intent to amend its answer "in order to remedy any pleading defects."[7]  Defs.' Resp. to Mot. Dismiss 22, 25-26.  Given these circumstances, the Court finds that the best course of action is to strike these allegations in order to allow Humbert to amend its sixth and seventh affirmative defenses.  As such, A&B's motion should be granted as to Humbert's mitigation and causation affirmative defenses.

## RECOMMENDATION

For the foregoing reasons, A&B's motion to dismiss and to strike (docket # 64) should be DENIED as to Humbert's first, second, and eighth affirmative defenses, and GRANTED in all other respects.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due by May 27, 2014.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.  If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

DATED this 8th  day of May, 2014.


/s/ Patricia Sullivan
Patricia Sullivan
United States Magistrate Judge

---

[7] To the extent Humbert seeks to amend its counterclaims and affirmative defenses via its opposition, Humbert's request is denied.  See LR 7-1(b) ("[m]otions may not be combined with any response, reply, or other pleading"); see also LR 15-1; Fed. R. Civ. P. 15(a)(2).  Any future motion to amend may be filed once the United States District Judge has completed his or her review of these Findings and Recommendation.

Page 19 - FINDINGS AND RECOMMENDATION